UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JUN 07 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| UNITED STATES OF AMERICA, | No. 08-50057 |
|---|---|
| Plaintiff - Appellee, | D.C. No. CR-06-00890-FMC-1 |
| v. | U.S. District Court for Central California, Los Angeles |
| CHAD CONRAD CASTAGANA, | MANDATE |
| Defendant - Appellant. | |



RECEIVED
CLERK, U.S. DISTRICT COURT

JUN -7 2010

CENTRAL DISTRICT OF CALIFORNIA
BY               DEPUTY

The judgment of this Court, entered May 14, 2010, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

Molly C. Dwyer
Clerk of Court
/s/
Theresa Benitez
Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br>v.<br>CHAD CONRAD CASTAGANA,<br>*Defendant-Appellant.* | No. 08-50057<br>D.C. No.<br>CR-06-00890-FMC-1<br>OPINION |

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
August 3, 2009—Pasadena, California

Filed May 14, 2010

Before: William C. Canby, Jr., Kim McLane Wardlaw and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Canby

## COUNSEL

Elizabeth A. Newman, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Eileen M. Decker, Assistant United States Attorney, National Security Section, Los Angeles, California, for the plaintiff-appellee.

## OPINION

CANBY, Circuit Judge:

Chad Conrad Castagana appeals his jury conviction of committing threats and hoaxes in violation of 18 U.S.C. § 1038(a)(1). Castagana's convictions arose from his sending threatening letters to various celebrities and political figures accompanied by a white powdery substance. On appeal, Castagana challenges the district court's rejection of his

requested jury instruction, which would have required the jury, in order to convict, to find that he specifically intended the recipients of his letters reasonably to believe that they contained anthrax. We conclude that § 1038(a)(1) contains no such specific intent element, and we accordingly affirm Castagana's conviction.

## Factual and Procedural Background

### The Letters

Between September 7 and November 9, 2006, Castagana mailed a total of fourteen envelopes containing notes with threatening language along with a white powdery substance, which was in fact not a biological weapon, but rather a mixture of laundry soap and cleanser. These letters were sent to comedians Jon Stewart and David Letterman, Viacom executive Sumner Redstone, Representative Nancy Pelosi, Senator Charles Schumer, and MSNBC political commentator Keith Olbermann. The letters threatened their recipients and expressed hostility to their assumed left-wing political views. A few examples follow:

> Do you remember what happened to that loudmouth Alan Berg back in the 1980s? You should Mr. Jon Stewart —
> New York City is so full of demagogues, I hope your kind live to see your city destroyed in your lifetime!

(Gov't Trial Ex. 3.)

> Keith Olbermann,
> There are too many demagogues in America.
> All of you are poisoning the well!
> Time to give your kind —
> a taste of your own medicine . . .

(Gov't Trial Ex. 4.)

> Hey Jon Stewart
> We Americans have ways of dealing with demagogues like you!
> You *poison* our well with your leftwing vitriol
> We *return* the action . . .

(Gov't Trial Ex. 5.)

> Death to Demagogues
> NYC = Judas City

(Gov't Trial Ex. 9.)

The letters with their white powder understandably caused massive and costly reactions in the offices of the recipients and relevant government agencies. Within days of sending the last letter, Castagana was apprehended at his home. After being advised of his *Miranda* rights, he admitted to having sent the letters. He stated that he had not intended to hurt anyone, but also described various steps he had engaged in to avoid being caught: he wore gloves to avoid leaving fingerprints on the letters, he mixed various powders together to make them harder to identify, he mailed the letters from a location away from his home to make them harder to track, and he used fictitious return addresses of celebrities to make it more likely that the celebrity recipients would open the envelopes. Castagana expressed regret that he had sent the letters himself, as well as surprise at being caught so quickly.

Castagana also admitted that his goal in including the powder was to get attention for the letters, but denied that it was "symbolic" or meant to represent anthrax. He did, however, state that the powder signified that liberals had become "toxic," and represented the "toxic" messages with which the celebrity liberals were polluting the airways.

### *The Trial*

Castagana was indicted for violations of § 1038(a)(1). At trial, Castagana did not contest that he had sent the letters, and

the Government did not contest that the powder sent in the letters was, in fact, harmless. Castagana defended on the ground that his mental disorders prevented him from forming the intent required for a violation of § 1038(a)(1). He introduced evidence of a long history of a severe mental condition. An expert testified that Castagana suffered from Asperger's disorder along with several other mental conditions. He also described Castagana as having "brain damage." This expert witness testified that Castagana had performed worse than any other person he had tested on several diagnostic tests he had administered, including one designed to test empathy. Because of his disability, this expert testified, Castagana had difficulty in understanding the feelings, emotions, and thoughts of others.

In line with this defense, Castanaga proposed a jury instruction that required the government, in order to convict, to prove that Castagana intended his targets, as reasonable persons, to believe that the envelopes contained anthrax. The district court refused to give the instruction. The jury found Castanaga guilty, and Castanaga appeals, raising as error only the denial of his proposed instruction.

## Discussion

[1] The text of the statute under which Castagana was convicted provides in pertinent part:

(a) Criminal violation.—

> (1) In general.—Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a vio-

> lation of [specified anti-terrorism laws,] shall [be fined or imprisoned as provided].

18 U.S.C. § 1038(a)(1).

The instruction that Castagana requested in the district court informed the jury that, to convict, it must find beyond a reasonable doubt not only that Castagana intended to convey false or misleading information, but also that:

> the defendant intended that a reasonable person could believe the information.

and that

> the defendant intended that a reasonable person could believe that the information indicated that an activity had taken, was taking, or would take place that if true would constitute a violation [of anti-terrorism statutes].

Castagana thus reads § 1038(a)(1) so that "with intent" modifies all of the clauses that follow in the statute's key phrase: "with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place . . . ." 18 U.S.C. § 1038(a)(1).

[2] The district court rejected Castagana's interpretation of the statute and, with regard to the element of intent, instructed the jury only that, to convict, they must find that Castagana "intentionally conveyed false or misleading information."[1] It further instructed that the jury "may consider evidence of abnormal mental condition in deciding whether the govern-

---

[1] Castanaga does not raise any issue as to whether he intended to convey false information.

7010    UNITED STATES v. CASTAGANA

ment has proved beyond a reasonable doubt that the defendant acted with the intent to commit the crimes charged."

We agree with the district court and reject Castagana's interpretation of § 1038(a)(1).[2] Our inquiry must begin with the text of the statute itself. Castagana claims that the statute is ambiguous, and therefore we should apply the "presumption [that] a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994). We cannot agree with this conclusion, because the statute is not ambiguous with regard to the scienter requirement. It refers, as we have said, to "conduct with intent to convey false or misleading information *under circumstances where such information may reasonably be believed and where such information indicates* that [terrorist] activity has taken, is taking, or will take place." 18 U.S.C. § 1038(a)(1) (emphasis added). These phrases clearly indicate that Congress intended to apply an objective standard to the second part of the statute, explicitly distinguished from the initial portion to which the explicit subjective intent requirement applies.

It is difficult to imagine how we could interpret the statute as Castagana suggests, because it makes little sense to say that a perpetrator can *intend* that anything be "reasonably believed." Whether the circumstances were such that Casta-

---

[2]We review de novo the denial of a jury instruction based on a question of law. *See United States v. Wiseman*, 274 F.3d 1235, 1240 (9th Cir. 2001). We reject the government's contention that we may review only for plain error because Castagana did not enter an objection at the time the court adopted its jury instructions. Castagana had made his point clear by his requested instruction, and his entire trial focused on his inability to form an intent concerning the perceptions of his targets. There was no doubt of his continuing position, and in these circumstances he was not required to make " 'a futile formal objection.' " *Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 714 (9th Cir. 2001) (quoting *Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir. 1998)).

gana's victims or other observers may reasonably have believed his statements to indicate terrorist activity is a question wholly independent of Castagana's intentions. That is precisely what a reasonableness standard, triggered by factual circumstances, means. The insertion of this reasonableness requirement removes from consideration the subjectivity of the actor's intent and replaces it with an objective standard.

[3] Although we need not rely on legislative history because the statute is unambiguous, the legislative history of the statute and common sense support this interpretation. The statute, the Stop Terrorists and Military Hoaxes Act of 2004, was passed as part of the larger Intelligence Reform and Terrorism Prevention Act of 2004. Pub. L. No. 108-458, 118 Stat. 3638. While the statute was under consideration by Congress, Representative Sheila Jackson Lee proposed an amendment that would "make [the statute] a more narrowly-tailored prohibition and deterrent to truly malicious defendants." H.R. Rep. No. 108-505, at 27 (2004). The amendment would have "add[ed] the necessary intent to harm another individual that [was] missing from the current language of the provision." *Id.* Admittedly, this amendment would have imposed a much stricter scienter requirement than that for which Castagana argues.[3] Congress rejected the amendment. *Id.* at 38. It is noteworthy that, in arguing against the amendment, Representative Smith, the original sponsor of the bill, declared:

> [A]dding the phrase "to cause harm or bodily injury" could render the legislation useless. . . . By its very nature, a hoax is not necessarily intended to cause harm or injure a person. . . . By using powdered sugar, instead of anthrax, the person engaging in the hoax can argue it was a joke and that they did not intend to harm anyone.

---

[3]Representative Lee's amendment would have changed § 1038(a)(1) to read as follows: "Whoever knowingly engages in any conduct with intent to convey false or misleading information *and to harm or cause bodily damage* under circumstances . . . ." H.R. Rep. 108-505, at 27.

> The issue is not whether the criminal intended to physically harm the victims of the hoax, *but whether the victims reasonably believed they were harmed.*

*Id.* at 34 (emphasis added). Opposition to the amendment on this ground, although not determinative, at least suggests that § 1038(a)(1) is focused on the objective perception of the targeted victims, and not on the subjective intent of the perpetrator.

[4] The legislative goals of the statute further support this conclusion. Congress recognized that "hoaxes diminish the resources of Federal law enforcement and the military and divert Federal investigators and soldiers [sic] attention away from actual threats," stating that § 1038(a)(1) was "intended to prevent such a drain." *Id.* at 6. It is clear from the facts of this case that such hoaxes do evoke drastic reactions from their targets, both in terms of governmental resources and recipient emotions. Construing the statute to assess threats from an objectively reasonable standard is consistent with Congress's goal of preventing the massive consequences of such hoaxes, but Castagana's proposed interpretation is not. Even if a perpetrator does not intend that his false information be believed as indicative of terrorist activity, the false information will nevertheless drain substantial resources and cause mental anguish when it is objectively credible. Castagana's actions implicate all of the public safety concerns that motivated Congress to enact § 1038(a)(1), whether or not he has the capacity to formulate empathy with his targets or others and could be said to intend what they reasonably believed.

[5] Finally, comparison to other statutes and judicial decisions supports the interpretation we adopt today. Congress has often explicitly included a required mental state in other hoax statutes. *See, e.g.,* 18 U.S.C. § 35(b) (requiring that a false bomb threat on an airplane be made "willfully and maliciously, or with reckless disregard for the safety of human life"); 18 U.S.C. § 844(e) (requiring that a hoax about a "fire

UNITED STATES v. CASTAGANA 7013

or an explosive" be made "willfully" or "maliciously"). Instead of including these specific terms of art in § 1038(a), Congress crafted this statute using the language "under circumstances where" and "may reasonably be believed." 18 U.S.C. § 1038(a)(1). This is a noticeable difference, and we have read statutes with language similar to § 1038(a)(1) as containing an objective reasonableness standard. *See Roy v. United States*, 416 F.2d 874, 877-78 (9th Cir. 1969) (holding that the crime of "knowingly and willfully" threatening the President required only that the threat be made under circumstances where "a reasonable person would foresee that the statement would be interpreted by those to whom" it is addressed as a serious threat and not be the result of mistake, duress or coercion); *see also United States v. Hanna*, 293 F.3d 1080, 1084-85 (9th Cir. 2002) (applying objective reasonableness standard to presidential threat statute, 18 U.S.C. § 871, and re-affirming *Roy*).

[6] Castagana attempts to avoid the effect of these cases by invoking *Virginia v. Black*, 538 U.S. 343 (2003). *Black*, which was decided after at least some of the cases listed above, held that the anti-cross-burning statute at issue was constitutional only to the extent that it criminalized cross burnings that were *intended to menace* their recipients. *Id.* at 359-60. Similarly, Castagana cites *United States v. Cassel*, 408 F.3d 622, 631-33 (9th Cir. 2005), where we reached a similar conclusion in the context of the crime of intimidation to hinder or prevent a person from bidding for the sale of federal land, 18 U.S.C. § 1860. Both of these cases held that the proscription of expressive conduct or speech was a violation of the First Amendment in the absence of a requirement of intent to intimidate, which intent would render their conduct or speech an unprotected threat. But Castagana has raised no such First Amendment claim, either in the district court or here.[4]

---

[4] We accordingly need not concern ourselves with whether the mailing of unidentified white powder to targeted individuals can ever be expressive conduct not constituting a threat and therefore subject to First Amendment protection.

See *United States v. Romo*, 413 F.3d 1044, 1051 n.6 (9th Cir. 2005) (adhering to objective standard for threat to President despite the decision in *Cassel* because Romo raised no First Amendment question and *Cassel* did not purport to address statutes for which we had traditionally employed the objective standard).[5] Castagana's arguments are addressed only to the question whether § 1038(a)(1) is properly interpreted to require the perpetrator to intend that the victims reasonably believe that the powder he sent them is anthrax. For the reasons already stated, we conclude that no such element of intent is required.

Finally, Castagana directs us to the Supreme Court's recent decision in *Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009), which he argues is analogous to this case. In that case, the Court addressed a statute punishing "Whoever . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person . . . ." 18 U.S.C. § 1028A(a)(1). The Court carried forward the "knowingly" requirement of the statute to apply to its later elements, holding that the perpetrator must know that the false identification belongs to another person. *Flores-Figueroa*, 129 S.Ct. at 1894. Castagana contends that we must treat "with intent" the same way the Supreme Court treated "knowingly" in *Flores-Figueroa*, and apply it to all subsequent clauses of the statute. We reject this argument because the language of the statute in *Flores-Figueroa* is not parallel to that of § 1038(a)(1). The Supreme Court in *Flores-Figueroa* relied on the common English usage of "knowingly," and the natural reading that applies "knowingly" to multiple clauses that follow. *Id.* at 1890-91. Section 1038(a)(1), in contrast, employs "with

---

[5]*But cf. United States v. Stewart*, 420 F.3d 1007, 1018 (9th Cir. 2005) (questioning whether *Romo* adequately distinguished *Cassel* or was consistent with *Black*'s definiton of true threat). We are not bound by *Stewart*'s dictum, however, as we are by the holding in *Romo*. We also remain convinced, for the reasons stated, that *Black* does not require a result different from the one we reach here.

| UNITED STATES v. CASTAGANA | 7015 |
|---|---|

intent" in a conventional manner for the clause immediately following, "to convey false or misleading information," but then shifts to an objective mode to which "with intent" cannot apply as a matter of common English usage. "With intent" does not easily flow into "under circumstances where such information may reasonably be believed." *Flores-Figueroa* is simply not a useful model for construing § 1038(a)(1).

## Conclusion

[7] We conclude that, to convict under § 1038(a)(1), the government need not prove that Castagana "intended" that his victims could "reasonably believe" his false information or that they could "reasonably believe" that terrorist activity had taken, was taking, or would take place. The district court therefore did not err in declining to give Castagana's requested instruction. The judgment of the district court is

**AFFIRMED.**